UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FERNANDO HARO III,<br><br>    Plaintiff<br><br>v.<br><br>KRM, INC. AND KVP, LP,<br><br>    Defendants | Case No.: 2:20-cv-02113-APG-DJA<br><br>**Order Granting in Part the Defendants' Motions to Dismiss**<br><br>[ECF Nos. 26, 27] |

Plaintiff Fernando Haro III sues defendants KRM, Inc., doing business as the Thomas Keller Restaurant Group (TKRG), and KVP, LP, doing business as Bouchon at the Venetian (Bouchon). Haro worked at Bouchon's bakery, mostly making macrons. In relation to his employment, he filed two EEOC complaints, filed and settled a federal lawsuit, assisted another employee in filing a complaint with the Nevada Equal Rights Commission, and submitted a witness statement on behalf of another employee. Haro also filed two workers' compensation claims for carpal tunnel syndrome and epicondylitis, which he contended were caused by the repetitive nature of piping macron shells at the bakery. He alleges that TKRG and Bouchon undermined his workers' compensation claims by providing false testimony during the administrative proceedings that resulted in the denial of his claims. He asserts the defendants did so in retaliation for his protected activity.

Haro asserts claims for: (1) discrimination and retaliation under Title VII, the Americans with Disabilities Act (ADA), and the ADA Amendments Act of 2008 (ADAAA); (2) negligent and intentional infliction of emotional distress, and (3) negligent hiring, retention, or supervision. ECF No. 22. The defendants separately filed motions to dismiss. Both defendants present anti-

SLAPP arguments, asserting that the employees' testimony during the workers' compensation proceeding were good faith communications in direct connection with an issue under consideration by administrative and judicial bodies. Alternatively, they argue Haro's claims fail on the merits because Haro was not an employee at the time of the acts he complains about, so he could not have suffered an adverse employment action. They also contend that the defendants' actions were not outrageous and Haro did not allege extreme emotional distress. They argue there are no allegations that the employees who testified were unfit, untrained, or behaved wrongfully. And they contend that the issue of whether the employees testified falsely has been resolved by the administrative proceeding and related appeals in Nevada state court, so Haro's claims are issue-precluded. TKRG separately contends that it was not Haro's employer, and Haro did not exhaust his Title VII administrative remedies as to it.

Haro responds that Nevada's anti-SLAPP statute does not apply to his federal claims. He also contends that the defendants have not shown that their employees' testimony was in good faith, and that the testimony did not involve a matter of public concern. He asserts that Title VII can apply to former employees and that he has adequately alleged the defendants retaliated against him for engaging in protected activity. He contends that the defendants' course of conduct in preventing him from receiving benefits for his occupational injuries was extreme and outrageous and caused him mental distress. He asserts that he adequately alleged that the defendants knew or should have known that its employees had reputations for harassment and retaliation, and the defendants knowingly allowed that conduct to interfere with his workers' compensation claims after he had complained about these employees. He contends issue preclusion does not apply because there is no final ruling on his workers' compensation claim. Finally, he states that both defendants were his employers. He contends that he exhausted his

Title VII administrative remedies because he mentioned both Bouchon and TKRG in his charge, and TKRG employees were aware of the retaliatory conduct.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the pending motions. I grant in part and deny in part the defendants' motions to dismiss.

**I. ANALYSIS**

    **A. Anti-SLAPP**

Under Nevada's anti-SLAPP statute, a "person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." Nev. Rev. Stat. § 41.650. A defendant may file a special motion to dismiss if the defendant can show "by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Id.* § 41.660(3)(a). As relevant here, a good faith communication in furtherance of the right to petition means: "[a w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law . . . which is truthful or is made without knowledge of its falsehood." *Id.* §§ 41.637(3)-(4). If the defendant makes this initial showing, the burden shifts to the plaintiff to show "with prima facie evidence a probability of prevailing on the claim." *Id.* § 41.660(3)(b).

The defendants have not shown by a preponderance of the evidence that the employees made good faith communications that were truthful or without knowledge of falsehood. None of the evidence attached to the motions supports a finding of good faith. All but one of the exhibits attached to the motions are court orders or filings by Haro. None of them supports a finding that

the employees (whom Haro contends are lying) made good faith communications. ECF Nos. 26-1 through 26-3; 26-5 through 26-7; 27-1 through 27-3; 27-5 through 27-7.  The only other exhibit is the defendants' brief before the Supreme Court of Nevada. ECF Nos. 26-4; 27-4. Attorney argument does not constitute evidence.  The defendants do not present, for example, affidavits from the employees stating that they testified truthfully or without knowledge of falsehood.

Because the defendants have not met their initial burden by a preponderance of the evidence, I deny their motions under Nevada's anti-SLAPP statute.  I deny Haro's request for attorney's fees because he has not incurred any as a pro se litigant.  I also deny his request for statutory damages under Nevada Revised Statutes § 41.670(3)(a) because I do not find the need to do so to deter the filing of frivolous or vexatious anti-SLAPP motions.

**B. Issue Preclusion**

I deny the defendants' motions to dismiss based on issue preclusion because they have not met their burden of showing that there was a final ruling on the merits. *See Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 916 (Nev. 2014) (for issue preclusion to apply, there must be a final ruling on the merits); *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 717 (Nev. 2009) (the party asserting issue preclusion bears the burden of showing it applies).  The defendants' own evidence shows that the Nevada Court of Appeals reversed the hearing officer's decision and ordered a new administrative hearing. ECF No. 26-5 at 7, 18-19.  I decline to consider the defendants' argument, raised for the first time in reply,[1] that Haro did not appeal the hearing officer's credibility determinations, making those findings final. *See* ECF No. 40 at 13.

---

[1] "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

4

Even if I considered this argument, the defendants cite no authority for the proposition that when a new hearing is ordered, the hearing officer cannot make different credibility determinations or fact findings. In this case, the Court of Appeals left open whether the Appeals Division should reassign the case to a different hearing officer. ECF No. 26-5 at 18 n.11. Presumably, a new hearing officer would make his or her own credibility and fact findings. Consequently, I deny this portion of the defendants' motions.

### C.  Failure to State a Claim

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

#### 1.  Exhaustion of Administrative Remedies

TKRG contends that Haro's Title VII claim against it should be dismissed because there are no allegations that Haro filed an EEOC charge against TKRG or that he received a notice of right to sue TKRG from the EEOC. It also contends that Haro's allegations relate to post-employment events during the workers' compensation proceedings, but TKRG is not named in the workers' compensation claim or the related appeals. Haro responds that his 2020 EEOC charge mentions both Bouchon and TKRG in the charge summary and he has sufficiently alleged the defendants are in an agency relationship such that he has exhausted as to both defendants.

*a. Joint Employer*

Under Title VII, an entity can be held liable for discrimination if it is the plaintiff's "employer." 42 U.S.C. § 2000e-2(a). "It is now well-settled that an individual can have more than one employer for Title VII purposes." *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019). Two entities may be joint employers where they "simultaneously share control over the terms and conditions of employment, such that both should be liable for discrimination relating to those terms and conditions." *Id.* Because the ADA's definition of employer is the same as Title VII's, there can be joint employers under the ADA as well. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (stating that "the ADA's definition of 'employer' tracks that of Title VII").

To determine whether entities are joint employers, I refer to common law agency principles. *U.S. Equal Emp. Opportunity Comm'n*, 915 F.3d at 638. The critical indicator is "the extent of control that one may exercise over the details of the work of the other." *Id.* (quotation omitted). I may also consider:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (quotation omitted).

In his second amended complaint, Haro alleges that TKRG operates Bouchon, and KVP is the entity through which TKRG operates the restaurant. ECF No. 22 at 3. He also alleges TKRG is Bouchon's "parent company," and that he filed several complaints with TKRG's director of human resources. *Id.* at 4. He also alleges that Julie Secviar, who TKRG admits is its

employee, communicated with him about his workers' compensation claim and was going to testify at the hearing until the defendants allegedly decided to retaliate by instead sending his harassers to the hearing. *Id.* at 9.  And Haro contends the two alleged harassers were willing to lie at the hearing because they were otherwise subject to termination under TKRG's policy. *Id.* at 9-10.

Taking these allegations and all reasonable inferences as true, Haro has plausibly alleged that TKRG was a joint employer.  He alleges he was able to complain to the TKRG human resources department about activities at Bouchon, and that Bouchon employees were subject to termination if they violated TKRG's policies.  That suggests an element of control over the employment relationship sufficient to survive dismissal.  I therefore deny TKRG's motion on this basis.

### b. Exhaustion

"Title VII charges can be brought against persons not named in an E.E.O.C. complaint as long as they were involved in the acts giving rise to the E.E.O.C. claims." *E.E.O.C. v. Nat'l Educ. Ass'n*, 422 F.3d 840, 847 (9th Cir. 2005) (quotation omitted).  "Further, where the EEOC or defendants themselves should have anticipated that the claimant would name those defendants in a Title VII suit," the plaintiff exhausts administrative remedies as to those defendants "even though they were not named in the EEOC charge." *Id.* (quotation omitted).

Haro's EEOC charge stated he was "employed at Bouchon at the Venetian, which is owned and operated by Thomas Keller Restaurant Group (TKRG)." ECF No. 26-7 at 2.  Haro's charge thus named TKRG.  Based on his other allegations regarding his complaints to TKRG and the defendants allegedly substituting TKRG employees who were going to testify at the workers' compensation hearing for Haro's harassers at Bouchon, he has plausibly alleged that

TKRG was either involved in the acts giving rise to his claims or should have anticipated that TKRG would be named in a subsequent lawsuit. I therefore deny TKRG's motion to dismiss on this basis.

### 2. Title VII and ADA Retaliation

To state plausible Title VII[2] and ADA retaliation claims, Haro must allege "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (Title VII); *see also Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (same for ADA). An "action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (Title VII); *see also Pardi*, 389 F.3d at 850 (same for ADA).

The defendants argue this claim fails because Haro was no longer an employee at the time of the acts he complains about. But the defendants cite no law in their motion for the proposition that an adverse action is impossible once the plaintiff is no longer employed. The law is to the contrary. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (holding that Title VII's definition of "employee" encompasses former employees); *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997) ("A plaintiff may seek relief for retaliatory actions taken after her employment ends if the alleged discrimination is related to or arises out of the employment

---

[2] The title of Haro's first claim mentions both discrimination and retaliation. ECF No. 22 at 15. "Title VII prohibits employment discrimination based on any of its enumerated grounds: race, color, religion, sex, or national origin." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (simplified); *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 n.8 (9th Cir. 2008) ("Title VII does not encompass discrimination on the basis of disability."). Haro does not plausibly allege he was discriminated against on any of the grounds under Title VII. I therefore interpret his Title VII claim to be a retaliation claim only.

relationship." (quotation omitted)); *Pardi*, 389 F.3d at 844-47, 850 (concluding the plaintiff stated a prima facie case of ADA retaliation based on post-termination actions). I therefore deny this portion of the defendants' motion.

### 3. ADA Discrimination

To state a prima facie case for ADA discrimination, Haro must allege: "(1) that [he] is disabled within the meaning of the ADA; (2) that [he] is a qualified individual with a disability; and (3) that [he] was discriminated against because of [his] disability." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quotation omitted). "A qualified individual with a disability is defined as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* (quotation omitted).

Haro has not plausibly alleged ADA discrimination because he bases his claims on post-employment conduct and he does not allege he was seeking another position with the defendants. He thus does not allege he is a qualified individual within the meaning of an ADA discrimination claim. Although it is unlikely that Haro will be able to state this claim, it is not clear that amendment would be futile, so I dismiss this claim without prejudice. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (simplified)).

### 4. Intentional and Negligent Infliction of Emotional Distress

TKRG argues that Haro fails to allege outrageous conduct on its part because it did not participate in the workers' compensation proceedings. Bouchon argues that participating in workers' compensation proceedings is not extreme and outrageous. Both defendants argue that

this claim fails because Haro does not allege serious emotional distress resulting from their conduct.  Haro responds that he has alleged that the defendants engaged in an ongoing retaliation campaign against him that was designed to cause him emotional distress.  He also states that he has alleged that he suffered emotional distress because he filed a workers' compensation claim for stress and mental anguish, was placed on medication, and was referred to a psychologist for counseling.  He also alleges that the defendants' retaliatory conduct has delayed the award of benefits at a time when he was in pain, required surgeries, and engaged in physical therapy.

      To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).  Extreme and outrageous conduct is "that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (simplified).  I make the initial determination as to whether a reasonable jury could find conduct to be extreme and outrageous. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing Restatement (Second) of Torts § 46 cmts. h, j).  IIED "is recognizable in the employment termination context." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999).  However, IID "is not intended to reach every discrimination claim." *Alam*, 819 F. Supp at 911. The more extreme the outrage, the less evidence of physical injury or illness from the emotional distress is required. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983); *see also Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010) (finding that insomnia, nightmares, general nervousness, and "a purely emotionally upsetting situation" are insufficient to support an IIED

claim under Nevada law, and explaining that objectively verifiable evidence, like a need for "psychiatric assistance or medication," are necessary to meet the physical manifestation requirement).

To state a claim for negligent infliction of emotional distress, a plaintiff must allege (1) the defendant acted negligently, (2) either a physical impact or, in the absence of a physical impact, proof of serious emotional distress causing physical injury or illness, and (3) actual or proximate causation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998). "[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of a physical impact, proof of serious emotional distress causing physical injury or illness must be presented." *Id.* (quotation omitted). The physical impact requirement may not be satisfied by pleading "general physical or emotional discomfort." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 483 (Nev. 1993).

Haro alleges a concerted effort to deprive him of workers' compensation benefits for a serious and permanent workplace injury through false testimony, in retaliation for his protected activity. While these actions are not as extreme as allegations in other cases, I cannot say as a matter of law that no reasonable jury could conclude the defendants engaged in extreme and outrageous conduct by allegedly perjuring themselves to cause Haro to suffer financial hardship and related emotional distress in an effort to punish him for legally protected activity. *See Dillard Dep't Stores*, 989 P.2d at 886; *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995).

However, Haro has not sufficiently alleged severe emotional distress. He alleges he suffered "nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety." ECF No. 22 at 18-19. That is insufficient to

11

plausibly allege severe emotional distress. *See Miller*, 970 P.2d at 577 (stating that the plaintiff's testimony that he was depressed for some time but did not seek any medical or psychiatric assistance was insufficient to support an IIED claim). I cannot consider Haro's statements in his response brief about taking medication or being referred for psychological counseling because those facts are not in the complaint. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, I grant Haro leave to amend this claim because it is not clear that amendment would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### 6. Negligent Hiring, Training, and Supervision

Both defendants argue that this claim fails because there are no allegations that the employees who testified at the workers' compensation proceeding were unfit for their positions or were improperly trained. Haro responds that the defendants knew or should have known that these individuals who worked for the defendants were harassing him or had a reputation for harassment. He also alleges the defendants knowingly permitted his two former harassers to testify at his hearing, which allowed them to interfere with his workers' compensation claim.

In Nevada, an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). An "employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else." *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013). This claim requires more than evidence of an employee's negligence, as there must also be evidence that the employer was negligent in ensuring their fitness for the position. *Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750, 751 (Nev. 1999).

Haro alleges that while he was employed at Bouchon, he was harassed by sous chef Ben Garcia and pastry chef Scott Wheatfill. ECF No. 22 at 4. He asserts he complained about this conduct several times. *Id.* He also alleges he was "assaulted and battered" by Director of Operations Brian Cochran when he refused to drop an EEOC complaint. *Id.* According to the complaint, two human resources employees were directly involved in his workers' compensation claim, but they were not the witnesses the employer sent to his workers' compensation hearing. *Id.* at 9. Instead, Cochran and Wheatfill testified and, according to Haro, perjured themselves. *Id.* He alleges Wheatfill should have been terminated for retaliation and Cochran terminated for workplace violence. *Id.* at 10. According to the complaint, the defendants did not take corrective action to address the harassment and assault, and instead retained these employees in leadership and management roles. *Id.* at 20-21. Haro also alleges the defendants allowed Cochran and Wheatfill to take retaliatory actions against him after he was no longer employed by having them testify at his workers' compensation hearing. *Id.* at 9, 20-21.

Haro has not plausibly alleged a claim for negligent hiring because he makes no plausible allegations that would suggest the defendants should not have hired Wheatfill, Cochran, or any other employee. He also does not plausibly allege negligent training because he makes no factual allegations about the defendants' training or lack thereof. Because it is not clear that amendment would be futile, I grant Haro leave to amend if facts exist to do so.

However, Haro plausibly alleges a claim for negligent retention and supervision. He alleges that he complained multiple times about Wheatfill's harassment of him but that the defendants not only retained Wheatfill but gave him an opportunity to retaliate against Haro by sending him to testify at Haro's workers' compensation hearing. Likewise, he alleges Cochran assaulted him for his refusal to drop an EEOC complaint, but the defendants retained Cochran

13

and gave him an opportunity to retaliate as well. Viewing these allegations and all reasonable inferences in the light most favorable to Haro, he has sufficiently stated a claim for negligent retention and supervision. I therefore deny this portion of the defendants' motions.

## II.  CONCLUSION

I THEREFORE ORDER that the defendants' motions to dismiss **(ECF Nos. 26, 27) are GRANTED in part** as set forth in this order.

I FURTHER ORDER that plaintiff Fernando Haro III may file an amended complaint by **April 29, 2022**, to correct the deficiencies identified in this order, if facts exist to do so. If Haro does not file an amended complaint by then, this case will proceed on the claims that were not dismissed.

DATED this 30th day of March, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE